The **TOWN OF MARBLE**, a Colorado statutory municipal corporation; The Town Council of the Town of Marble; and **Hal Sidelinger** and **Robert Pettijohn**, in their official capacities as members of the Town Council, Petitioners,

v.

**Larry DARIEN, Dana Darien, Tom Williams, and Dan Brumbaugh, Respondents.**

**No. 07SC01.**

Supreme Court of Colorado, En Banc.

April 14, 2008.

Caloia Houpt & Hamilton, P.C., Sherry A. Caloia, Mary Elizabeth Geiger, Glenwood Springs, Colorado, Attorneys for Petitioners.

Luke J. Danielson, Gunnison, Colorado, R.A. Santarelli, Almont, Colorado, Attorneys for Respondents.

Colorado Municipal League, Geoffrey T. Wilson, Denver, Colorado, Attorney for Amicus Curiae Colorado Municipal League.

Levine Sullivan Koch & Schulz, LLP, Thomas B. Kelley, Steven D. Zansberg, Adam M. Platt, Denver, Colorado, Attorneys for Amici Curiae Colorado Press Association and Colorado Freedom of Information Council.

Carver Schwarz McNab & Bailey, LLC, Christopher Kamper, Denver, Colorado, Attorney for Amicus Curiae Common Cause of Colorado, Inc.

Justice EID delivered the Opinion of the Court.

This case arises from an alleged violation of a provision of the Colorado Open Meetings Law that requires public bodies to provide full notice of public meetings. On January 8, 2004, the town council of Petitioner Town of Marble held a public meeting at which it voted to reject a proposal for erecting a permanent monument at Mill Site Park, a local park owned by the Town. Respondents, who are proponents of the proposal, brought suit, alleging that the posted notice of the meeting was not "full" notice, as required by the Open Meetings Law, because it did not expressly state that the council would be taking formal action on the proposal. After a bench trial, the trial court found for Petitioners. The court of appeals, however, reversed and remanded with instructions to void the January 8th vote. *See Darien v. Town of Marble*, 159 P.3d 761, 765–66 (Colo. App.2006).

We granted certiorari and now reverse the court of appeals. We hold that the notice of the January 8th meeting was "full" because an ordinary member of the community would understand that the agenda item listed on the notice—"Mill Site Committee Update"—would include consideration of, and possible formal action on, the Mill Site Park proposal. In addition, we hold that because the notice contained the agenda information available at the time of posting, it satisfied the requirement that "specific agenda information" be included in the notice "where possible." Consequently, we hold that the January 8th notice complied with the Open Meetings Law.

### I.

The Town of Marble ("Town") is a small community located in Gunnison County. The Town is named for the Yule Marble Quarry ("Quarry"), which is an active marble mining operation located four miles south of the Town. In 1981, the Town acquired land where the marble from the Quarry had previously been milled. The Town developed this

land into Mill Site Park, a public park that currently features remnants of the old mill, as well as pictures and historical facts pertaining to marble mining and the mill.

In the spring of 2002, the Town established the Mill Site Committee ("Committee") for the purpose of developing a plan for the future use of Mill Site Park. The Committee included two members of the town council ("Council"), two members of the Marble Historical Society, and two members of the public. The Committee was advisory only, meaning that it had no power to make decisions regarding the use of Mill Site Park.

The Quarry has supplied marble for many buildings and monuments, including the Tomb of the Unknowns monument in Arlington National Cemetery. That monument is in need of repair, and in 2003, Cemetery officials approached the Quarry operator about the possibility of supplying marble for a new monument. The Quarry operator then began discussions with the Town, the Marble Historical Society, and others about the possibility of cutting a new block of marble for the Tomb of the Unknowns.

The Council has five members (including the mayor) and holds monthly meetings at which it conducts all business. At the Council's meeting on October 2, 2003, the Quarry operator presented a proposal for the Tomb of the Unknowns project ("TOU project"). This proposal recommended that two blocks be quarried and that the second block be displayed permanently in Mill Site Park. The proposal was discussed under an agenda item entitled "Review Visitor Center Priority List."

The TOU project proved divisive, as some residents of the Town ardently opposed a permanent monument in Mill Site Park. A meeting was held on November 1, 2003, to discuss the Quarry operator's proposal, and witnesses described the meeting as contentious. The issue was discussed again at the Council's November 6, 2003 meeting under an agenda item entitled "Mill Site Update." The mayor at the time, Wayne Brown, informed everyone that public comment would be limited because the Council was not planning on taking any formal action on the proposal at the particular meeting. Thereaf-

ter, six people spoke on the TOU project— three in favor and three in opposition.

Also at the November 6th Council meeting, Mayor Brown made two motions, both of which passed, requesting permission to purchase road signs and permission to purchase maps. Brown made both motions during discussion of the agenda item entitled "Mayor's Update." Minutes from prior Council meetings establish that the Council had previously taken formal actions under agenda items entitled "Road Update" (August 5, 2003 meeting) and "Ice Rink Update" (October 2, 2003 meeting).

The next meeting of the Committee was scheduled for November 19, 2003. Prior to that meeting, Mayor Brown requested and received, by unanimous vote, the consent of the Council to (1) define the Committee's goals and objectives, (2) remind the Committee that it was advisory only and that the Council would make all decisions regarding the use of Mill Site Park, and (3) re-appoint Committee members on the condition that they promise to be objective. Mayor Brown accomplished these three goals at the November 19th Committee meeting, and he further asked the Committee to seek public input concerning the TOU project and to present its findings to the Council on February 5, 2004. At this point, the co-chairs of the Committee were Petitioner Hal Sidelinger and Respondent Dana Darien. Sidelinger was also a member of the Council.

The next discussion of the TOU project occurred at the Committee's meeting on December 11, 2003. Mayor Brown rescinded the February 5th deadline in an effort to give the Committee more time to develop proposals. Committee members discussed various ideas for development of Mill Site Park, and they decided to conduct a survey of property owners and registered voters. One of the Committee members, Connie Hendrix–Manus, prepared a memorandum of ideas for the park. Also, Plaintiff's Exhibit 28 contains a chart detailing five proposed levels of park development. The memorandum and chart do not focus solely on the TOU project; rather, they discuss a wide range of park-development issues, including preservation of

existing historical artifacts, restoration of landscaping, addition of a visitor's center or museum, maintenance of the park's ice skating rink, and provision for development costs.

The Council held its regular meeting on January 8, 2004. The notice of this meeting was posted at least twenty-four hours in advance in the usual location. The notice indicated the date, time, and location of the meeting and contained an agenda. In relevant part, the agenda states:

Mill Site Committee Update Hal Sidelinger 7:30–7:45

- Authorization for Mill Site Committee survey expenditure(s)
- Endorse replacement of MSC member

The bottom of the notice also provides, "The next [Council] meeting will be held Thursday, February 5, 2004. The next Mill Site Committee meeting will be held Thursday, January 15 at 7:00 p.m. . . . ." The Town clerk prepared the notice using the agenda information that had been determined at the time of posting. Fifteen citizens attended the meeting; fourteen of the fifteen opposed the TOU project.

In preparation for the January 8th Council meeting, Sidelinger reviewed the Town's master plan and discussed Mill Site Park with various concerned citizens and Mayor Brown. Sidelinger concluded that he could not support the TOU project because it proposed a permanent structure in Mill Site Park, which he believed violated the Town's master plan.[1] At the meeting, Sidelinger stated that the focus of the Committee should change, and he made a motion that the Town not allow a permanent structure for the TOU project in Mill Site Park. The motion passed four to one. The trial court found that Sidelinger "had no preconceived intent nor plan to make the motion to withdraw support of the TOU project prior to the discussion which occurred at the meeting." The Committee conducted its January 15th meeting, and continued to meet regularly thereafter.

In February 2004, Respondents brought suit against Petitioners, alleging that the notice of the January 8th meeting was insufficient under the Colorado Open Meetings Law, §§ 24–6–401 to –402, C.R.S. (2007) ("OML"). After a bench trial, the trial court held for Respondents, concluding, in an order dated February 2, 2005, that the notice of the January 8th meeting was sufficient and that the Council was not required to indicate on the agenda that it might take formal action on the TOU project.

The court of appeals reversed, holding "that the notice was not full, adequate, or fair under the circumstances" because it used the term "update," which the court interpreted to exclude the possibility that the Council would take formal action on the TOU project. *Darien*, 159 P.3d at 765. In addition, the court of appeals noted that by announcing the date of the Committee's next meeting, the notice "conveyed that the committee's work would continue and, hence, that there would not be a final decision regarding the project." *Id.* Finally, the court of appeals held that it was "possible" to include "specific agenda information" under section 24–6–402(2)(c) in this case because the Council could have adjourned, set a new meeting, and posted a new notice for that meeting that would include a specific agenda item stating that the Council would take formal action on the TOU project. *Id.* We granted certiorari and now reverse the court of appeals.

## II.

### A.

The OML requires public meetings to be open to the public at all times. § 24–6–402(2)(a). A public meeting is defined as "[a]ll meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken." *Id.* Furthermore, the OML requires notice of public meetings as follows:

Any meetings at which the adoption of any proposed policy, position, resolution, rule,

---

1. The Town's master plan states, "The community does not want to host more visitors by promoting, exploiting or otherwise marketing the Mill Site as an attraction. The historic site should be left in its existing state."

regulation, or formal action occurs or at which a majority or quorum of the body is in attendance, or is expected to be in attendance, *shall be held only after full and timely notice to the public.* In addition to any other means of full and timely notice, a local public body shall be deemed to have given full and timely notice if the notice of the meeting is posted in a designated public place within the boundaries of the local public body no less than twenty-four hours prior to the holding of the meeting. The public place or places for posting such notice shall be designated annually at the local public body's first regular meeting of each calendar year. *The posting shall include specific agenda information where possible.*

§ 24–6–402(2)(c) (emphasis added). Here, there is no dispute that the notice to the public was "timely." Instead, the dispute focuses on whether the notice was "full."

■ The OML states as its underlying policy that "the formation of public policy is public business and may not be conducted in secret." § 24–6–401. For this reason, we have recognized that the OML is "clearly intended to afford the public access to a broad range of meetings at which public business is considered." *Benson v. McCormick,* 195 Colo. 381, 383, 578 P.2d 651, 652 (1978); *accord Cole v. State,* 673 P.2d 345, 347 (Colo. 1983) (quoting *Benson* ). In determining whether the notice at issue is "full," we apply an objective standard, meaning that a notice should be interpreted in light of the knowledge of an ordinary member of the community to whom it is directed. This standard is warranted by the OML's stated purpose, which is to provide fair notice of public meetings to members of the community. *See* §§ 24–6–401 & –402(2)(c); *Benson,* 195 Colo. at 383, 578 P.2d at 652; *see also Hallmark Builders & Realty v. City of Gunnison,* 650 P.2d 556, 560 (Colo.1982) (applying objective standard to notice of a public hearing on a zoning ordinance).

In *Benson,* we noted that the OML fails to "define[ ] the content of the required notice." 195 Colo. at 383, 578 P.2d at 653. We went on to hold that the full and timely notice requirement "establishes a *flexible standard* aimed at providing fair notice to the public," and we explained that satisfaction of this standard "depend[s] upon the particular type of meeting involved." *Id.* (emphasis added). In that case, the chairman of a legislative committee had posted a list of all bills that were *capable* of being considered at a particular meeting. *Id.* A citizen challenged the adequacy of such notice, arguing that the committee chairman should be required to identify which bills would reasonably be reached at a given meeting. *Id.* We disagreed with this argument, concluding that the "full and timely notice" requirement was satisfied because "[l]egislative committee chairmen, as a practical matter, are rarely able to predict with certainty which matters will be considered at a particular meeting." *Id.* at 384, 578 P.2d at 653. We declined to impose a "precise agenda requirement" because it would "unduly interfere with the legislative process." *Id.* Finally, we concluded that the full notice requirement should not be interpreted to "interfere with the ability of public officials to perform their duties in a reasonable manner." *Id.* In sum, we adopted a "flexible" standard that would take into account the interest in providing access to "a broad range of meetings at which public business is considered," as well as the public body's need to conduct its business "in a reasonable manner."

**B.**

■ Applying *Benson's* "flexible" standard, we begin by considering the circumstances surrounding the Council's January 8th meeting. The nature of the business discussed at the meeting was the development of Mill Site Park. In particular, the TOU project was discussed under the agenda item entitled "Mill Site Committee Update."[2] This title was consistent with those used in notices of previous Council meetings, where

---

2. Two topics were listed under the "Mill Site Committee Update" agenda item: "Authorization for Mill Site Committee survey expenditure(s)" and "Endorse replacement of MSC member." As we discuss below, the agenda item "Mill Site Committee Update" was broad enough to include consideration of the TOU Project.

the TOU project had been discussed under agenda items entitled "Review Visitor Center Priority List" and "Mill Site Update." At the Council's November 19, 2003 meeting, the Committee was tasked with seeking public input concerning the TOU project, and the project was one of several Mill Site Park development proposals that the Committee considered at its December 11, 2003 meeting. The Committee's involvement with the TOU project was thus common knowledge, and in fact, Respondent Dana Darien was co-chair of the Committee.

Under these circumstances, an ordinary member of the Town's community would understand that the TOU project was a likely candidate for discussion under the topic "Mill Site Committee Update." And in fact, the project was discussed under that agenda item. Hal Sidelinger, co-chair of the Committee and member of the Council, was identified on the meeting notice as the person who would present the "Mill Site Committee Update." As part of his presentation, Sidelinger stated that the TOU project violated the Town's master plan because that plan did not permit permanent structures at the Mill Site. After discussion, Sidelinger moved that, consistent with the master plan, no permanent structure be erected in Mill Site Park, and the motion passed, effectively killing the TOU project. Because an ordinary member of the community would understand that the TOU project could be considered in relation to the "Mill Site Committee Update," we conclude that the notice of the January 8th meeting properly satisfied the OML's full notice requirement.

█ We observe that the notice of the January 8th meeting exceeds the notice given in the *Benson* case, which simply mentioned the bills that were capable of being considered at the particular meeting. Here, by contrast, the agenda stated that there would be a "Mill Site Committee Update," which would be reasonably understood to include consideration of the TOU project, and such consideration actually occurred. Thus, the notice sufficiently informed the public of the nature of the business to be considered. Under *Benson,* a notice need not precisely set forth every single item to be

considered at a meeting. 195 Colo. at 384, 578 P.2d at 653. Such a requirement would violate a central teaching of *Benson*—that public bodies be permitted to conduct business "in a reasonable manner," *id.*—because it would prohibit them from addressing any item not specifically listed on the notice even though the item is reasonably related to a listed item. Thus, a notice is sufficient as long as the items actually considered at the meeting are reasonably related to the subject matter indicated by the notice, which occurred in this case.

### C.

Respondents argue, however, that the "Mill Site Committee Update" notice was not "full" notice, for two reasons. First, they argue that it was misleading because the term "update" is a term of limitation, in that it excludes the possibility that formal action of any kind could be taken with regard to the Mill Site and the TOU project. Second, they argue that it was not "full" because it failed to meet the statutory requirement that notice "shall contain specific agenda information where possible"; according to Respondents, it was "possible" to list the issue of whether the TOU project was consistent with the Town's master plan because the Council could have adjourned, set a new meeting, and included a more specific agenda item in the notice of that future meeting. We consider each argument in turn.

### 1.

According to Respondents, the term "update" suggests that the TOU project might be discussed, but not acted upon. The court of appeals agreed, concluding that by using the term "update," "the notice did not say that the Council would make a final decision and provided no basis for the public to infer that the Council would vote on whether to accept or reject the [TOU] project at its January 8 meeting." *Darien,* 159 P.3d at 765. We disagree with Respondents and the court of appeals, and hold that the notice was not misleading.

We note, as a preliminary matter, that the Town never promised to refrain from taking any formal action on the TOU project while

the Committee formulated its proposals. As Mayor Brown made clear at the November 19, 2003 Committee meeting, the Committee was merely advisory, and the Town retained full control over the decisions regarding the use of Mill Site Park. Thus, the Town did not make any misrepresentations concerning the action that could or could not be taken on the TOU project.

Nor did the use of the term "update" suggest that formal action would not be taken on the TOU project. Used in the context of the Town's notice, the term "update" indicated that a particular subject would be considered at the meeting. Here, that is exactly what happened. Sidelinger presented the "Mill Site Committee Update," which included his conclusion that the TOU project was inconsistent with the Town's master plan and his motion that the Council adopt the position that no project at the Mill Site could include a permanent structure. The Council's action on the topic was part of its consideration of the topic. Because the possibility of formal action is inherent in consideration of topics at public meetings, see § 24–6–402(2)(c) (describing public meetings as, inter alia, "[a]ny meetings at which . . . formal action occurs"), the notice of the January 8th meeting did not have to state that the Council might take formal action on the TOU project.

In fact, the record shows that the Council regularly took formal action under agenda items with the word "update" in their titles. For example, at its November 6, 2003 meeting—a meeting involving a discussion of the TOU project—the Council took formal action twice under the agenda item entitled "Mayor's Update." Thus, the Council's past practice demonstrates that "update" was used as a word of description and did not convey any sort of limitation on the Council's ability to take formal action. The notification was not misleading, as the term "update" meant that a particular subject would be considered and potentially acted upon.

If we were to accept the Respondents' argument, and conclude that the term "update" could not be used to describe consideration of a particular topic if that consideration might lead to formal action, a public body such as the Town would be required to adjourn every time that consideration of an already noticed topic turned to action. At that point, the public body would be required to set a future meeting and issue a new notice of that meeting listing the fact that formal action might be taken on a particular topic. But the OML imposes no requirement that specific advance notice be given of formal actions that might be taken. Cf. Nev. Rev.Stat. Ann. § 241.020(2) (2007) (requiring notices of public meetings to include, among other things, (1) the time, place, and location of the meeting; (2) an agenda with a clear and complete statement of the topics to be considered; and (3) *a description of what formal actions might be taken*). The General Assembly could have written the OML to require that specific notice of formal action be given. For example, with regard to state-agency rulemaking, it has required agencies to publish notice of (1) the time, place, and nature of any proposed rulemaking; (2) the authority for proposing the rule; and (3) "either the terms or substance of the proposed rule or a description of the subjects and issues involved." § 24–4–103(3)(a), C.R.S. (2007). Here, by contrast, the OML simply requires that notice be "full." That standard was satisfied in this case because the notice adequately informed the public of the subject matter of the meeting—that is, the "Mill Site Committee Update."

Moreover, requiring the Council to adjourn, set a future meeting, and issue a new notice—like requiring the agenda to precisely list every single item to be considered at a meeting—would run afoul of *Benson's* admonition that a public body be permitted to conduct its business in a reasonable manner. As noted above, the Council's discussion and consideration of a particular topic often led to action on that topic. Requiring the Council to adjourn, set a future meeting, and issue a new notice on a particular topic every time that discussion turns to action on an already noticed topic would unreasonably hamper the business and operation of government.

Respondents also contend that because the notice of the January 8th meeting listed the date (January 15th) of the next Committee meeting, it suggested that the Committee's

work would continue and, by implication, that no formal action would be taken on the TOU project. The court of appeals agreed with Respondents, stating that "the most straightforward meaning of the notice was that the committee would continue its work at a meeting the following week." *Darien*, 159 P.3d at 765. However, the Committee actually did continue its work, as it met on January 15th and continued to meet regularly thereafter. The record demonstrates that the Committee was considering a whole host of options for the development of Mill Site Park in addition to the TOU Project, including restoration of the Park's landscaping and preservation of its existing historical artifacts. After the January 8th meeting, the Committee continued considering the options other than the TOU Project. Thus, the notice's suggestion that the Committee's work would continue did not preclude the Council's taking formal action on the TOU project at its January 8th meeting.

### 2.

Respondents raise a second ground to support their argument that notice was not "full"—namely, that the notice failed to "include specific agenda information where possible," as required by the OML. *See* § 24–6–402(2)(c).[3] Again, the court of appeals agreed with Respondents, finding that it was actually "possible" to adjourn the meeting and issue a notice of a future meeting that included an agenda item stating that the Council would take formal action on the TOU project. *Darien*, 159 P.3d at 765. The court reasoned that it would be "possible" to adjourn, set a future meeting, and issue a new notice because, among other things, there was a "lack of urgency" and an "absence of evidence that postponement of the decision would have unduly interfered with the ability of the [Council] to perform its duties." *Id.* In other words, according to the court of appeals, the "specific agenda information where possible" provision—like the full notice provision—requires a public body to adjourn, set a future meeting, and issue a new notice that includes specific notification of

formal action when consideration of an already noticed topic turns to action.

For the same reasons that we disagree with the argument in the context above, we disagree with it here. The OML does not impose such a requirement of adjournment and re-notification when the action already falls under a topic listed on the notice, and we decline to impose one. Indeed, under the court of appeals' reasoning, a public body would be required to adjourn its meeting whenever there was the slightest deviation from the precise topic as stated in the notice, as it would almost always be "possible" to adjourn and meet again in the future. Again, this reading of the OML would place an unreasonable restriction on the conduct of public business by a public body.

█ The statutory provision requiring the notice to include "specific agenda information where possible," § 24–6–402(2)(c), simply requires the public body to include specific agenda information in its posting when it is "possible" to do so—that is, when that information is available at the time of posting. The statute provides, *"The posting shall include specific agenda information where possible."* § 24–6–402(2)(c) (emphasis added). Thus, if at the time of "posting," it is "possible" to include specific agenda information, the notice "shall" include that information. Here, the requirement was met because the Town posted "specific agenda information" by including the available agenda information—i.e., "Mill Site Committee Update" and corresponding agenda sub-items—on the notice.

Respondents contend that our interpretation of the OML's "specific agenda information where possible" requirement will allow public bodies to withhold agenda items by waiting until after notice is posted to formulate the true agendas for their public meetings. We agree with Respondents that the OML prohibits bad-faith circumvention of its requirements, but such behavior is simply not at issue in the case at bar. The trial court found that Sidelinger "had no precon-

---

**3.** The provision requiring "specific agenda information where possible" was added to the OML

in 1991, after we decided *Benson*.

ceived intent nor plan to make the motion" that he did, and Respondents do not challenge this factual finding on appeal. By listing "Mill Site Committee Update," the notice satisfied the requirement that "specific agenda information" be provided where possible.[4]

## III.

We hold that the January 8th notice in this case satisfied the OML's "full" notice requirement because an ordinary member of the community would understand that the "Mill Site Committee Update" agenda item would include consideration of, and possible formal action on, the TOU project. In addition, we hold that because the notice contained the agenda information available at the time of posting, it satisfied the OML's requirement that "specific agenda information" be included "where possible." Because they provided full notice of the January 8, 2004 public meeting, we therefore hold that Petitioners did not violate the OML. Consequently, we reverse the court of appeals and reinstate the trial court's order of February 2, 2005.

Justice MARTINEZ dissents.

Justice MARTINEZ, dissenting.

I disagree with the majority's holding that the public received "full" notice of the January 8th meeting. At this meeting, the Council decided the highly contentious issue of the TOU project, and yet none of the proponents of the project attended. In my view, the notice failed to fairly inform the public that the Council would take formal action on the TOU project at this meeting. Accordingly, I dissent.

Colorado's Open Meetings Law requires that the public receive "full and timely notice" of a public meeting. § 24–6–402(2)(c),

C.R.S. (2007). This notice requirement establishes "a flexible standard aimed at providing fair notice to the public." *Benson v. McCormick,* 195 Colo. 381, 383, 578 P.2d 651, 653 (1978); *see* maj. op. at 1152. Thus, as the majority correctly notes, this court must apply an objective standard, assessing the notice from the perspective of "an ordinary member of the community to whom it is directed." *See* maj. op. at 1152; *see also Benson,* 195 Colo. at 383, 578 P.2d at 653.

Nevertheless, the majority fails to apply this objective standard and instead incorrectly focuses on the Council's subjective intent in using the term "update" in the January 8th meeting notice. The majority notes that the term "update" in the agenda item "Mill Site Committee Update" indicated that the Council intended to "consider" the Committee's work, *see* maj. op. at 1154, but did not have any preconceived plan to take formal action on the TOU project. *See id.* The majority also observes that the Council previously discussed the TOU project under agenda items such as "Mill Site Update," *see id.* at 1153, and regularly took formal action under agenda items labeled as "update." *See id.* at 1154. Hence, the majority concludes that "the term 'update' [did not] suggest that formal action would not be taken on the TOU project." *Id.* at 1153–1154.

While generally the term "update" may include taking formal action, the content of the January 8th meeting notice excluded the possibility that the Council would take formal action on the TOU project at the meeting. The notice contained an agenda item "Mill Site Committee Update" as well as a specific description of that item—"Authorization for Mill Site Committee survey expenditure(s)" and "Endorse replacement of [Mill Site Committee] member." Moreover, the notice also stated that the next Mill Site Committee meeting would take place a week later, on January 15th.

---

4. Finally, as a general matter, Respondents point to the fact that fourteen of the fifteen citizens who attended the January 8th Council meeting opposed the TOU project. Assuming this circumstance could be relevant, it is worth noting that the OML requires full notice, not full attendance. Moreover, the fact that the meeting drew fourteen people who had an interest in the TOU project actually works against Respondents' ar-

gument, as it provides some circumstantial corroboration for the conclusion that the meeting's notice fulfilled the OML's stated purpose of affording public access to meetings where public business is conducted. *See* § 24–6–401; *Benson,* 195 Colo. at 383, 578 P.2d at 652 (stating that the OML "was clearly intended to afford the public access to a broad range of meetings at which public business is considered").

As used here, the term "update" modified the word "Committee" rather than the words "Mill Site," thus suggesting the Council would discuss housekeeping matters concerning the work of the Committee rather than the TOU project itself. Additionally, the specific description of the agenda item provided content to the word "update," which further indicated to the specified matters. Finally, while the Committee's work was not limited to the consideration of the TOU project, the TOU project was a divisive and publicized issue that was in the forefront of the Committee's activities. Thus, as used here, "update" was a term of limitation, which, read together with the information on the next Mill Site Committee meeting, strongly implied that a decision on the TOU project was not imminent. Consequently, an ordinary member of the community did not have fair notice that the Council would take formal action on the TOU project. Indeed, none of the proponents of the TOU project attended the January 8th meeting.

This conclusion is entirely consistent with *Benson's* requirement that providing full notice not interfere with "the ability of public officials to perform their duties in a reasonable manner." *Benson*, 195 Colo. at 384, 578 P.2d at 653. According to the majority, requiring that the notice include more than "Mill Site Committee Update" would in effect prevent the Council from conducting business in a reasonable manner and thus would violate *Benson*. *See* maj. op. at 1153. However, the majority's discussion of *Benson* fails to take into account the amendment of section 24–6–402(2)(c), adopted after *Benson* was decided, requiring that a notice of a public meeting be posted and that "[t]he posting ... include specific agenda information where possible." *See* ch. 142, sec. 1, § 24–6–402(2)(c), 1991 Colo. Sess. Laws 815, 816. Following this amendment, the statute encourages, but does not require, advance planning as to what matters are going to be transacted at a public meeting.

Here, the Council indicated that the "update" would concern funding of a survey to be conducted by the Committee and replacement of a Committee member. Consequently, while the notice here exceeded the notice in *Benson* in specificity, *see* maj. op. at 1153, in contrast to *Benson*, the Council limited the scope of action that might be taken with respect to the Committee's work. Holding the Council to the limitation it chose to impose on itself does not, in any way, restrict the Council's ability to conduct its business in a "reasonable manner." Rather, it is consistent both with section 24–6–402(2)(c) and *Benson*.

Because the notice of the January 8th meeting did not fairly inform the public that the Council would take formal action on the TOU project, I dissent.